Charles J. Cooper (*Pro Hac Vice* Application Forthcoming), DC Bar No. 248070
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 220-9600
Email: ccooper@cooperkirk.com

Michael B. McClellan, CBN 241570
NEWMEYER & DILLION LLP
895 Dove Street, Fifth Floor
Newport Beach, CA 92660
Telephone: (949) 854-7000
Email: Michael.McClellan@ndlf.com

*Attorneys for Plaintiff The GEO Group, Inc.*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE GEO GROUP, INC., | CIVIL ACTION NO: |
| Plaintiff, | **COMPLAINT** |
| v. | |
| GAVIN C. NEWSOM, in his official capacity as Governor of the State of California; XAVIER BECERRA, in his official capacity as Attorney General of the State of California | |
| Defendants. | |

1. Plaintiff The GEO Group, Inc. (GEO) brings this action for declaratory and injunctive relief against Defendants Governor Gavin C. Newsom and Attorney General Xavier Becerra, striking down California Senate Bill 29 (SB-29), codified in relevant part at CAL. CIV. CODE § 1670.9(d), as an unconstitutional attempt by the State of California to regulate and discriminate against the Federal Government and its contractors.

2. Just last term, in *Dawson v. Steager*, the Supreme Court reiterated a constitutional principle "almost as old as the Nation" itself: the State must "treat those

- 1 -                                                                    COMPLAINT

who deal with the federal government as well as it treats those with whom [the State] deals itself." 139 S. Ct. 698,703, 704 (2019) (quotation marks and alterations omitted). That venerable principle, "which so entirely pervades the constitution, is so intermixed with the materials which compose it, so interwoven with its web, [and] so blended with its texture," *McCulloch v. Maryland*, 4 Wheat. (17 U.S.) 316, 426 (1819), is under attack by the State of California.

3. SB-29, via Section 1670.9(d), purports to require contractors operating federal immigration detention facilities to submit to special requirements for obtaining local zoning permits. Specifically, the statute mandates that the public receive 180 days' notice of a proposed conveyance or permitting action allowing a private corporation to house or detain noncitizens for purpose of civil immigration custody. Further, the public must be allowed to provide comments at two public hearings before a permit may issue.

4. Because California has now—via another statute called Assembly Bill 32—purported to prohibit the Federal Government from using private detention facilities in California once the current contracts with those facilities expire, there does not appear to be any realistic prospect that SB-29 will ever be applied to another federal contractor other than GEO, since only GEO is obligated under its current contracts with the Federal Government to convert buildings formerly used for other purposes into federal immigration detention facilities.

5. There is no doubt that California generally has the power to modify the procedures governing the issuance of constitutionally valid zoning permits within the State. But what California may *not* do is "target the federal government alone" for disfavored treatment, *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010), imposing "a specialized burden on federal activity" with the obvious intent and design of delaying and thwarting federal immigration detention, *United States v. California*, 921 F.3d 865, 882 (9th Cir. 2019). Yet, that is precisely what SB-29 does: it singles out contractors who operate federal immigration detention facilities for

burdens that it refuses to impose on California's own detention facilities. In so doing, SB-29 asserts the authority to discriminate against, and directly regulate, the Federal Government, flouting the Supreme Court's two-centuries-old teaching about the nature of federal-state relations under the Constitution.

6. The GEO Group, as the owner and operator of federal immigration detention facilities burdened by SB-29, brings this action to defend the principles first articulated by the Supreme Court two hundred years ago and reiterated just last year. This Court should declare Section 1670.9(d) unconstitutional and enter a preliminary and permanent injunction restraining Defendants from enforcing the statute against GEO.

**JURISDICTION & VENUE**

7. This Court has jurisdiction under 28 U.S.C. § 1331 because the question whether CAL. CIV. CODE § 1670.9(d) violates the Supremacy Clause of the United States Constitution is a federal question.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred, or a substantial part of the property that is the subject of this action is situated, in this District. GEO's Central Valley Modified Community Correctional Facility (MCCF) and Golden State MCCF—two of the immigration detention facilities regulated by Section 1670.9(d)—are located in this District, and the effects of Section 1670.9(d) are felt in this District.

**THE PARTIES**

9. Plaintiff The GEO Group, Inc. is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Boca Raton, Florida.

10. Defendant Gavin C. Newsom is the Governor of the State of California. He has "[t]he supreme executive power" of the State of California (the "State") and is charged with "see[ing] that the law is faithfully executed." CAL. CONST. art. V, § 1.

As head of the Executive Branch, he has a duty to "supervise the official conduct of all executive and ministerial officers," including the Attorney General. CAL. GOV'T CODE § 12010. In light of these duties, Governor Newsom has responsibility for enforcing Section 1670.9(d). He is sued in his official capacity.

11. Defendant Xavier Becerra is the Attorney General of the State of California. He is "the chief law officer of the State" with "the duty . . . to see that the laws of the State are uniformly and adequately enforced." CAL. CONST. art. V, § 13. In light of these duties, Attorney General Becerra has responsibility for enforcing Section 1670.9(d). He is sued in his official capacity.

## FACTUAL ALLEGATIONS

### I. Senate Bill 29 and California's Efforts to Obstruct Federal Immigration Detention

#### A. Senate Bill 29 (SB-29)

12. On December 5, 2016, Senate Bill 29 (SB-29) was introduced in the California Legislature. As relevant here, the bill—as enacted—amends the "Unlawful Contracts" title of the California Civil Code to prohibit city, county, and local law enforcement agencies from entering into contracts "with the federal government or any federal agency or a private corporation to house or detain noncitizens for purposes of civil immigration custody" unless those contracts were in effect before January 1, 2018, and it prohibits the renewal or modification of such contracts thereafter "in a manner that would expand the maximum number of contract beds that may be utilized to house or detain in a locked detention facility noncitizens for purposes of civil immigration custody." CAL. CIVIL CODE § 1670.9(a)–(b).

13. SB-29 also restricts the issuance of permits for federal immigration detention facilities:

> A city, county, city and county, or public agency shall not, on and after January 1, 2018, approve or sign a deed, instrument, or other document related to a conveyance of land or issue a permit

> for the building or reuse of existing buildings by any private corporation, contractor, or vendor to house or detain noncitizens for purposes of civil immigration proceedings unless the city, county, city and county, or public agency has done both of the following:
>
> (1) Provided notice to the public of the proposed conveyance or permitting action at least 180 days before execution of the conveyance or permit.
>
> (2) Solicited and heard public comments on the proposed conveyance or permit action in at least two separate meetings open to the public.

*Id.* § 1670.9(d).

14. The Senate Floor Analysis of SB-29 stated that its enactment was necessary to obstruct federal immigration policy: "President Donald Trump has . . . made it clear that he intends to detain more immigrants and expand private for profit detention facility use. This bill would protect immigrants held in immigrant detention in California."[1]

15. The Assembly Committee on Judiciary analysis of the bill likewise stated that it was needed "[i]n light of the changed circumstances in the White House,"[2] and it quoted the author as saying that the bill was necessary due to "the new administration's commitment to deport millions."[3]

16. Governor Jerry Brown signed SB-29 into law on October 5, 2017.

**B.     Assembly Bill 103 (AB-103) and Assembly Bill 32 (AB-32)**

17. Approximately one month after SB-29 was introduced in the California Legislature, January 10, 2017, Assembly Bill 103 (AB-103) was likewise introduced. Similar to SB-29, AB-103—as enacted—prohibits, among other things, city, county,

---

[1] Senate Rules Comm., Senate Floor Analyses for SB-29, 2017–18 Sess., at 5 (Cal. May 27, 2017), https://bit.ly/2O9c3eP.

[2] Assemb. Comm. on Judiciary, Analysis of SB-29, 2017–18 Sess., at 2 (Cal. June 27, 2017), https://bit.ly/2O9c3eP.

[3] *Id.* at 4.

and local law enforcement agencies from entering into contracts "with the federal government or any federal agency to detain adult noncitizens for purposes of civil immigration custody" unless those contracts were in effect before June 15, 2017, and it prohibits the renewal or modification of such contracts thereafter "in such a way as to expand the maximum number of contract beds that may be utilized to house or detain in a locked detention facility noncitizens for purposes of civil immigration custody." CAL. GOV'T CODE § 7310(a)–(b).

18. Governor Jerry Brown signed AB-103 into law on June 27, 2017.

19. The United States has challenged the constitutionality of AB-103, and that challenge remains pending in this Court. *See United States v. California*, No. 18-264 (E.D. Cal.).

20. On December 3, 2018, Assembly Bill 32 was introduced in the California Legislature. AB-32 builds on SB-29 and AB-103 by amending the California Penal Code in two principal ways.

21. First, it generally prohibits the California Department of Corrections and Rehabilitation (CDCR) from contracting with private, for-profit prison facilities to house state inmates, though it contains an important exception that essentially allows CDCR to continue contracting with private detention facilities indefinitely. *See* CAL. PENAL CODE § 5003.1.

22. Second, AB-32 generally prohibits the operation of a private detention facility in the State of California, subject to a handful of exceptions that apply almost exclusively to state facilities. *See* CAL. PENAL CODE §§ 9500–03, 9505.

23. On the day he introduced AB-32, Assembly Member Rob Bonta issued a press release touting the bill, in which he attacked "the Trump Administration['s] . . . cruel immigration policies" and criticized GEO for "facilitating the Trump Administration's political agenda."[4]

---

[4] Press Release, Assembly member Rob Bonta, *Bonta Introduces Bills Ending*

24. The Senate Floor Analysis of AB-32 anticipated litigation challenging its constitutionality by "this anti-immigrant President's Administration."[5]

25. Christina Fialho, co-founder of Freedom for Immigrants, a group listed as a supporter of AB-32 in the Senate Floor Analysis,[6] observed that AB-32 "will deal a critical blow to the Trump administration's efforts to further expand its system of immigration detention, especially as other states follow our lead."[7]

26. Governor Newsom signed AB-32 into law on October 11, 2019.

27. GEO and the United States have each challenged the constitutionality of AB-32, and those cases remain pending in the Southern District of California. *See The GEO Group, Inc. v. Newsom*, No. 19-2491 (S.D. Cal.); *United States v. Newsom*, No. 20-154 (S.D. Cal.).

**II.  U.S. Immigration and Customs Enforcement Detention Authority**

28. In November 2002, Congress assigned the border-enforcement functions of the former Immigration and Naturalization Service to the newly created Bureau of Immigration and Customs Enforcement, housed within the Department of Homeland Security.[8] The Bureau began operations in March 2003 and was renamed U.S. Immigration and Customs Enforcement (ICE) in March 2007.[9]

29. Congress has authorized or required the detention of aliens under several different statutes and conditions. *See, e.g.*, 8 U.S.C. §§ 1225(b)(1)(B)(ii),

---

*State's Involvement in For-Profit, Private Prison Industry* (Dec. 3, 2018), https://bit.ly/2Pga7Ch.

[5] Senate Rules Comm., Senate Floor Analyses for AB-32, 2019–20 Sess., at 5 (Cal. Sept. 9, 2019) [hereinafter Senate Floor Analyses for AB-32], https://bit.ly/35htShk.

[6] *Id.* at 8.

[7] Don Thompson & Amy Taxin, *California To End its Use of Private, For-Profit Prisons*, ASSOCIATED PRESS, Oct. 11, 2019, https://bit.ly/2Pgb6C6.

[8] U.S. IMMIGRATION & CUSTOMS ENF'T, CELEBRATING THE HISTORY OF ICE (Mar. 1, 2019), https://bit.ly/35Jas68.

[9] *Id.*

1225(b)(2)(A), 1226(a), 1226(c); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 836–38 (2018).

30. Congress has also directed that "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," 8 U.S.C. § 1231(g)(1), and it has instructed that ICE "shall consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility suitable for [detention]" "[p]rior to initiating any project for the construction of any new detention facility," *id.* § 1231(g)(2). Thus, Section 1231(g)(2) authorizes ICE to use private contractors to arrange for detention. *See United States v. California*, 921 F.3d at 882 n.7.

31. Pursuant to this authority, ICE "manages and oversees the nation's civil immigration detention system."[10]

### III. GEO's California ICE Detention Facilities

32. GEO currently operates two dedicated ICE detention facilities in California:

- Mesa Verde ICE Processing Center, located at 425 Golden State Avenue, Bakersfield, CA 93301, with a capacity of 400 beds. GEO has operated the Mesa Verde facility as an ICE detention facility since 2015. The Mesa Verde facility is about a 25.5-mile drive from the City of McFarland, though it is not under the jurisdiction of that city.

- Adelanto ICE Processing Center, located at 10400 Rancho Road, Adelanto, CA 92301, with a capacity of 1,940 beds. GEO has operated the Adelanto facility as an ICE detention facility since 2011.

---

[10] U.S. IMMIGRATION & CUSTOMS ENF'T, DETENTION MANAGEMENT (Dec. 18, 2019), https://bit.ly/2ZvGnGO.

33. On December 19, 2019, ICE entered into new contracts with GEO to continue operating the Mesa Verde and Adelanto facilities. The contracts each have a period of performance starting on December 20, 2019, and ending December 19, 2034. ICE has the option of terminating the contracts early every five years, with the first such option occurring on December 20, 2024.

34. GEO has continued to operate the Mesa Verde and Adelanto facilities under the terms of the new ICE contracts since December 20, 2019, in much the same manner as it was operating those facilities prior to signing the new contracts.

35. In addition, ICE has entered into contracts with GEO to convert two McFarland-area facilities and one Adelanto-area facility into dedicated ICE detention centers:

- Central Valley Modified Community Correctional Facility (MCCF)), located at 254 Taylor Avenue, McFarland, CA 93250, with a capacity of 700 beds;
- Golden State MCCF, located at 611 Frontage Road, McFarland, CA 93250, with a capacity of 700 beds;
- Desert View MCCF, located at 10450 Rancho Rd, Adelanto, CA 92301, with a capacity of 750 beds.

36. The Central Valley and Golden State facilities will serve as annexes to the Mesa Verde ICE Processing Center, while the Desert View facility will serve as an annex to the Adelanto ICE Processing Center.

**A.   Central Valley MCCF**

37. Central Valley MCCF is a GEO-owned prison previously operated under contract with CDCR. CDCR terminated its contract with GEO on July 10, 2019, effective September 30, 2019.

38. The Central Valley facility is now incorporated into the Mesa Verde contract, with a period of performance starting on December 20, 2019, and ending

December 19, 2034. ICE has the option of terminating the contract early every five years, with the first such option occurring on December 19, 2024.

39. Under the contract, GEO is obligated to immediately begin "Pre-Transition/Mobilization" activity at Central Valley, with a period of performance beginning on December 20, 2019, during which it must begin preparing the facility to receive ICE detainees. GEO began that process as soon as the contract became effective.

40. GEO has continued to operate the Central Valley facility under the terms of the new ICE contract since December 20, 2019.

**B.     Golden State MCCF**

41. Golden State MCCF is currently a prison owned and operated by GEO under contract with CDCR. CDCR has notified GEO that it will terminate its contract with GEO effective April 30, 2020.

42. The Golden State facility is now incorporated into the Mesa Verde contract, with a period of performance starting on December 20, 2019, and ending December 19, 2034. ICE has the option of terminating the contract early every five years, with the first such option occurring on December 20, 2024.

43. Under the contract, GEO is obligated to immediately begin "Pre-Transition/Mobilization" activity at Golden State, with a period of performance beginning on December 20, 2019, during which it must begin preparing the facility to receive ICE detainees. GEO began that process as soon as the contract became effective.

44. GEO has continued to operate the Golden State facility under the new ICE contract since December 20, 2019, even as it concurrently phases out CDCR operations at Golden State.

/ / /

/ / /

/ / /



### C. Desert View MCCF

45. Desert View MCCF is currently a prison owned and operated by GEO under contract with CDCR. CDCR terminated its contract with GEO effective February 29, 2020.

46. The Desert View facility is now incorporated into the same contract as the Adelanto facility, with a period of performance beginning on December 20, 2019, and continuing through December 20, 2034. ICE has the option of terminating the contract early every five years, with the first such option occurring on December 20, 2024.

47. Under the contract, GEO is obligated to immediately begin "Pre-Transition/Mobilization" activity at Desert View, with a period of performance beginning on December 20, 2019, during which it must begin preparing the facility to receive ICE detainees. GEO began that process as soon as the contract became effective.

48. GEO has continued to operate the Desert View facility under the new ICE contract since December 20, 2019, even as it concurrently phases out CDCR operations at Desert View.

## IV. GEO's Efforts To Obtain Amended Conditional Use Permits

49. Pursuant to the McFarland Municipal Code, the Central Valley and Golden State facilities are located in the M-3 zone, which is designated for General Manufacturing. *See* McFarland Municipal Code § 17.08.010. Detention facilities are not identified as a permissible use. *See id.* § 17.92.020. Thus, to operate a detention facility in M-3, GEO must have a conditional use permit (CUP). *See id.* § 17.152.020(D).

50. Central Valley and Golden State were first approved for CUPs in 1996. The City of McFarland modified the Central Valley and Golden State CUPs in 2008 and in 2013 based on changes to the types of CDCR inmates that would be housed at the facilities.

51. Mesa Verde, which (as noted above) is not within the jurisdiction of McFarland, was first approved for a CUP in 1987. It was amended in 2000 and 2005 due to changes in the facility's capacity to house detainees.

52. Pursuant to the Adelanto Municipal Code, GEO may only operate "Prisons/Correctional Facilities" and their analogues in specific zones and only after first obtaining a CUP. *See* Adelanto Municipal Code App'x A.

53. The Adelanto ICE Processing Center was first approved for a CUP in 2010. That CUP has not been modified since.

54. The Desert View facility was first approved for a CUP in 1996. The CUP was modified in 2004 due to an increase in facility capacity to house CDCR inmates.

55. GEO's CUPs for the Central Valley, Golden State, and Desert View facilities do not currently allow GEO to house federal male and female detainees. Thus, to ensure the continuing validity of its CUPs under municipal law, GEO was required to apply for modifications to its CUPs in order to house ICE detainees at its Central Valley, Golden State, and Desert View facilities.

56. On December 30, 2019, having signed its new contract on December 19, 2019 with the Federal Government to convert the Central Valley and Golden State facilities into dedicated ICE detention facilities, GEO applied to the McFarland Planning Commission for modifications to its CUPs to allow the Federal Government to house detainees at Central Valley and Golden State.

57. On December 23, 2019, having signed its new contract on December 19 2019 with the Federal Government to convert the Desert View facility into a dedicated ICE detention facility, GEO applied to the Adelanto Planning Commission for a modification to its CUP to allow the Federal Government to house detainees at Desert View.

58. Absent Section 1670.9(d), GEO's applications would have been processed under the McFarland and Adelanto municipal codes, which require only

one meeting—rather than two—prior to issuance of a permit. *See* McFarland Municipal Code § 17.148.080; Adelanto Municipal Code § 17.100.040.

59. Moreover, while Section 1670.9(d) requires that the first public notice of a hearing be given at least 180 days prior to the execution of a permit, the McFarland and Adelanto municipal codes require only 10 days' notice before the hearing, *see* McFarland Municipal Code § 17.148.080(B); Adelanto Municipal Code § 17.100.040(a), and in the case of McFarland, the municipal code requires a decision of the Commission within 35 days after the hearing and that the Commission's decision be deemed final if no appeal is made to the City Council within 15 days, *see* McFarland Municipal Code §§ 17.148.080, 17.148.100(A)–(B). Thus, from the issuance of a public notice to the issuance of a permit should take no longer than 60 days under the McFarland Municipal Code, absent an appeal to the City Council (an appeal procedure that is still available under Section 1670.9(d)), and that could require an additional 30 days. Indeed, in GEO's more than 20 years of experience with CUP applications and modifications in Adelanto and McFarland, the process typically requires no more than 90 days from beginning to end, inclusive of appeals to the city council.

60. On January 10, 2020, the McFarland Planning Commission issued the public notice of the first hearing on GEO's CUP-modification applications for Central Valley and Golden State.

61. The first hearing on GEO's CUP-modification applications for Central Valley and Golden State was held on January 21, 2020.

62. On January 11, 2020, the Adelanto Planning Commission issued the public notice of the first hearing on GEO's CUP-modification application for Desert View.

63. The first hearing on GEO's CUP-modification application for Desert View was held on January 22, 2020.

/ / /

64. On February 7, 2020, the McFarland Planning Commission issued the public notice of the second hearing on GEO's CUP-modification applications for Central Valley and Golden State.

65. The second hearing on GEO's CUP-modification applications for Central Valley and Golden State was held on February 18, 2020.

66. On February 6, 2020, the Adelanto Planning Commission issued the public notice of the second hearing on GEO's CUP-modification application for Desert View.

67. The second hearing on GEO's CUP-modification application for Desert View was held on February 19, 2020.

68. On February 18, 2020, the McFarland Planning Commission failed to approve GEO's CUP-modification applications for Central Valley and Golden State by a 2-2 vote.

69. On February 19, 2020, the Adelanto Planning Commission approved a resolution that approved GEO's CUP-modification application for Desert View but—in conformity with Section 1670.9(d)— deferred the issuance of the new permits until July 15, 2020, so that at least 180 days will have lapsed since the first public notices was given.

70. GEO appealed the decision of the McFarland Planning Commission to the McFarland City Council.

71. The additional hearing required by Section 1670.9(d), as well as the additional delay in the approval of GEO's CUP-modification applications required by Section 1670.9(d)'s 180-day notice period, have injured GEO and will continue to do so.

72. Because of the additional hearing required by Section 1670.9(d), GEO was forced to expend time, money, and other resources preparing for the additional hearings in McFarland and Adelanto and ensuring that GEO representatives would be present at the additional hearings. In addition, Section 1670.9(d) adds a minimum

1  of 90 days to the normal CUP modification process at both the City of Adelanto and
2  the City of McFarland, which would typically be completed in 90 days, inclusive of
3  any appeal to the City Council.

4        73.  In addition, the delay in approving GEO's CUP-modification
5  applications has prevented GEO from moving more quickly on the Pre-
6  Transition/Mobilization activities it is required to perform under its contracts with
7  the Federal Government. The additional three (3) months referred to in paragraph 72
8  caused and continues to cause a significant detrimental financial impact to GEO.

9        74.  Section 1670.9(d) results in three (3) months loss of federal revenue to
10 GEO, amounting to several millions of dollars, while GEO awaits the completion of
11 the 180-day period.

12       75.  Section 1670.9(d) also results in three (3) months of additional expenses
13 to GEO in continuing the employment of those individuals working at the previously
14 approved facility who will be transitioning to the re-purposed federal facility.

15       76.  GEO's Desert View and Golden State MCCFs have 274 employees,
16 which will require approximately $3.2 million in estimated payroll and benefit costs
17 during the three (3) additional months required under Section 1670.9(d) in order to
18 be transitioned into a fully operating federal facility.

19       77.  Because the permitting process mandated by Section 1670.9(d) is only
20 180 days, the process is too short to fully litigate a constitutional challenge to it.

21       78.  GEO has many contracts with the Federal Government and with ICE, in
22 particular, and it is common for the Federal Government to request amendments to
23 its contracts during the period of performance. Because GEO's ICE contracts have a
24 period of performance that runs through December 19, 2034, it is reasonable to
25 expect that the Federal Government will request amendments to one or both contracts
26 at some point in the next fifteen years, and it is reasonable to expect that such
27 amendments will require GEO to seek modifications of its CUPs, as GEO has had to
28 do for its immigration detention facilities in California in the past (except for the

1  Adelanto ICE Processing Center). GEO therefore faces a credible and substantial
2  threat of being subjected to Section 1670.9(d)'s requirements in the future.

**COUNT I: VIOLATION OF INTERGOVERNMENTAL IMMUNITY**
**(DISCRIMINATION AGAINST THE FEDERAL GOVERNMENT)**

79. Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs.

80. GEO, as a contractor for the United States, enjoys and is clothed in the Federal Government's intergovernmental immunity. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180–81 (1988); *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014).

81. A state law is invalid "if it operates so as to discriminate against the [Federal] Government or those with whom it deals." *United States v. City of Detroit*, 355 U.S. 466, 473 (1958).

82. Section 1670.9(d) *only* regulates land-conveyance documents and zoning permits for private entities carrying out federal operations. *See United States v. California*, 921 F.3d 865, 882, 883 (9th Cir. 2019).

83. By targeting *only* contractors carrying out federal operations, Section 1670.9(d) discriminates against the Federal Government. *See Dawson v. Steager*, 139 S. Ct. 698, 705–06 (2019); *Boeing*, 768 F.3d at 842–43.

84. Section 1670.9(d) is unconstitutional and invalid as applied to GEO.

**COUNT II: VIOLATION OF INTERGOVERNMENTAL IMMUNITY**
**(DIRECT REGULATION OF THE FEDERAL GOVERNMENT)**

85. Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs.

86. Under the Supremacy Clause of the United States Constitution, "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943); *see also North Dakota v. United States*, 495 U.S. 423, 451–52 (1990) (Brennan, J., concurring in the judgment in part and



dissenting in part) ("[T]hose dealing with the Federal Government enjoy immunity from state control . . . when a state law actually and substantially interferes with specific federal programs.").

87. By forbidding the approval of "a deed, instrument, or other document related to a conveyance of land or [the] issu[ance] [of] a permit for the building or reuse of existing buildings by any private corporation, contractor, or vendor to house or detain noncitizens for purposes of civil immigration" unless the City satisfies SB-29's notice and hearing requirements, Section 1670.9(d) substantially interferes with Federal Government operations.

88. Section 1670.9(d) substantially interferes with the ICE's ability to carry out its detention responsibilities for the Federal Government.

89. Congress has not authorized the State to regulate the Federal Government's activities with respect to federal detention facilities like GEO's.

90. Section 1670.9(d) is unconstitutional and invalid as applied to GEO.

## PRAYER FOR RELIEF

91. WHEREFORE, The GEO Group, Inc. respectfully requests that this Court enter an order and judgment:

    a. Declaring that Senate Bill 29, codified in relevant part at CAL. CIV. CODE § 1670.9(d), violates the Supremacy Clause of the United States Constitution and is unconstitutional as applied to GEO;

    b. Preliminarily and permanently enjoining Defendants, as well as their successors, agents, employees, and all those under their supervision from enforcing Section 1670.9(d) against GEO;

    c. Awarding attorneys' fees and costs as permitted by law; and

/ / /

/ / /

/ / /



      d.     Granting such other and further relief as this Court deems just and proper.

Dated: March 9, 2020

By: */s/ Michael B. McClellan*
Michael B. McClellan, CBN 241570
NEWMEYER & DILLION LLP
895 Dove Street, Fifth Floor
Newport Beach, CA 92660
Telephone: (949) 854-7000
Email: Michael.McClellan@ndlf.com

Charles J. Cooper,* DC Bar No. 248070
Michael W. Kirk,* DC Bar No. 424648
J. Joel Alicea,* DC Bar No. 1022784
Steven J. Lindsay,* VA Bar No. 92363
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 220-9600
Email: ccooper@cooperkirk.com
**Pro Hac Vice* Applications Forthcoming*

*Attorneys for Plaintiff The GEO Group, Inc.*